THE TOWNSHIP OF DOVER, IN THE COUNTY OF OCEAN, v. WILLIAM A. BRACKENRIDGE.

Submitted March 23, 1907—Decided September 11, 1907.

Where a tract of land, bounded upon one side by a highway and upon the opposite side by a river, had been purchased, and the purchasers had built a hotel upon the tract and opened a road through the land in front of the hotel from the said highway to the river, which road was used for more than twenty years by such of the public as wished, not merely to visit the hotel, but to go to the river for a variety of purposes, and this use was in nearly all instances without permission, and in all instances without interference—*Held*, that a verdict finding a dedication of such road to the use of the public would not be set aside.

---

On rule upon the plaintiff to show cause why a new trial should not be ordered.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRETSON and REED.

For the defendant and relator, *Isaac W. Carmichael.*

For the plaintiff and respondent, *Aaron E. Johnston* and *Theo. J. R. Brown.*

The opinion of the court was delivered by

REED, J. This is an action of ejectment brought by the township of Dover to recover possession of land which it claims has been dedicated for the purpose of a highway. This alleged highway is within the boundaries of a tract of land conveyed in 1870 to a company known as the Building and Improvement Association of Hudson County.

This tract, said to contain sixteen acres, was bounded by Washington street on the north and Toms river on the south. In the year 1870 the building and improvement company erected upon this tract a structure known as the Magnolia Hotel. The company also opened a road leading from Washington street to Toms river. This road was connected with the hotel by two circular drives, one running in front and the other in the rear of the hotel. The road in question from Washington street to the river seems to have been originally built to accommodate the owners and guests of the hotel. There was no plotting of the lot by maps exhibiting this road, and of course there were no sales of lots by conveyances referring to such a map.

. The township's right rests solely upon a dedication alleged to arise from twenty years' use of this road by such portions of the public in such circumstances as, it is insisted, raised an implied dedication of such road by the owners of the fee to the use of the public.

There was testimony by a number of witnesses that the line of this road was filled with gravel and material from Washington street, and with sand from the excavation for the cellar of the new hotel, and this filling was carried past the hotel itself—which seems to have stood some thirty feet from the river—down to the river, or within a few feet of it. The hotel seems to have been kept open intermittently for several years, and when open was reached from Washington street by the use of this road. So also the guests of the hotel by the use of this road reached the river bank, where there was in the summer a dock, built by the hotel people for their guests. But this dock seems to have been removed in the winter.

No doubt the principal use of this road while the hotel was

occupied was in this way. The road was designated by a track for travel by vehicles, and alongside of it was a path for pedestrians. The road was also used for access to Brackenridge's house, which was built along the road.

It was shown in the testimony that permission was sometimes asked at the hotel to use the road. Inquiries would no doubt be made at the hotel whether the road was open to the public, but the fact that some were told they could use it does not show that the hotel owners exacted such permission, or held those who failed to obtain such permission as trespassers. Indeed the evidence shows that such use as was made of the road was understood to be unrestricted.

The only question is whether the twenty years' use was so frequent and of such a kind as to permit a jury to find a presumption of dedicatory intent in the minds of the owners of the lands traversed. I think the evidence was sufficient for a jury to draw such a presumption.

As already remarked, it seems to have been used by everyone who had occasion to pass over it. Some went to the river to view it, some to take fishing boats, and others went as members of picnic parties. One witness said six years ago he carted poles to the river to load them upon a boat for transportation to a seaside city. The testimony of these witnesses is that those who traveled the road did so without permission from anyone, and that the use continued from 1870 for a period of more than twenty years.

The law was correctly charged, and there was evidence from which the jury could draw the inference that there was such acquiescence by the owners of the fee in the use of the road for a period of twenty years, without any act by them to repel the presumption of an intention by such owners, to subject the fee to a public use.

This was sufficient to support the verdict. *Wood* v. *Hurd, 5 Vroom* 87; *Clement* v. *Bettle, 36 Id.* 675.

The rule should be discharged.